# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (BID PROTEST)

ACCELGOV, LLC,

    *Plaintiff,*

v.

UNITED STATES,

    *Defendant.*

Case No. <u>26-878</u>

Judge <u>Edward H. Meyers</u>



**Redacted Version**

---

## ACCELGOV, LLC's MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED BRIEF

---

W. Brad English
Emily J. Chancey
Taylor R. Holt
Hunter M. Drake
MAYNARD NEXSEN PC
223 Washington Street NE, Suite 500
Huntsville, Alabama 35801
256.512.5705
benglish@maynardnexsen.com

# Table of Contents

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................... ii

Factual Allegations ............................................................................................................ 1

A.      Evaluation Criteria ................................................................................................. 1

B.      Evaluation and AccelGov's Exclusion from the Competition................................ 4

Argument and Citation of Authorities ............................................................................... 6

I.      AccelGov is likely to succeed on the merits ......................................................... 6

      A.      DHA unreasonably evaluated AccelGov under the Approach Subfactor................ 7

            1.   DHA deviated from the Solicitation and ignored AccelGov's effective operational risk management approach to give AccelGov its ██████████ ...7

            2.   DHA's ████████████ unreasonably penalized AccelGov's timeline presentation format ......................................................................................10

            3.   DHA's █████████ overlooks AccelGov's clear approach to meeting the PRS ............................................................................................................13

            4.   AccelGov provided more than a ████████████████ so the ████ ████████ is unreasonable, too .........................................................15

            5.   DHA's errors predicted AccelGov..........................................................16

      B.      DHA unreasonably evaluated AccelGov in the Scenarios Subfactor.....................17

II.     AccelGov will suffer irreparable harm without an injunction ...............................19

III.    The balance of harms favors AccelGov.................................................................20

IV.     An injunction serves the public interest in honest, open, and fair competition.................21

Conclusion .........................................................................................................................21

██████████████████████████████████████████████████████████████████████

**Table of Authorities**

**Cases:**

*22nd Century Tech., Inc. v. United States,*
176 Fed. Cl. 389 (2025) ................................................................................. 7, 13, 15, 17

*Advanced Sys. Tech., Inc. v. United States,*
69 Fed. Cl. 474 (2006) ................................................................................. 21

*Banknote Corp. of Am. v. United States,*
365 F.3d 1345 (Fed. Cir. 2004) ................................................................................. 12

*Barbaricum LLC v. United States,*
172 Fed. Cl. 186 (2024) ................................................................................. 7

*Blue Tech Inc. v. United States,*
155 Fed. Cl. 229 (2021) ................................................................................. 8, 12

*FirstLine Transp. Sec., Inc. v. United States,*
100 Fed. Cl. 359 (2011) ................................................................................. 13

*Frawner Corp. v. United States,*
161 Fed. Cl. 420 (2022) ................................................................................. 7, 17

*G4S Secure Integration LLC v. United States,*
161 Fed. Cl. 387 (2022) ................................................................................. 12

*Gentex Corp. v. United States,*
58 Fed. Cl. 634 (2003) ................................................................................. 7

*Great Lakes Dredge & Dock Co. v. United States,*
60 Fed. Cl. 3509 (2004) ................................................................................. 20

*Harmonia Holdings Grp., Inc. v. United States,*
166 Fed. Cl. 727 (2023) ................................................................................. 19

*Heritage of Am., LLC v. United States,*
77 Fed. Cl. 66 (2007) ................................................................................. 20

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
238 F.3d 1324 (Fed. Cir. 2001) ................................................................................. 6

*KWV, Inc. v. United States,*
108 Fed. Cl. 458 (2013) ................................................................................. 21

*Linc Gov't Servs., LLC v. United States,*
108 Fed. Cl. 473 (2012) ................................................................................. 20

*Magellan Corp. v. United States,*
27 Fed. Cl. 446 (1993) ................................................................................................. 19

*NetStar-1 Gov't Consulting, Inc. v. United States,*
98 Fed. Cl. 729 (2011) ............................................................................................. 6, 20

*Oenga v. United States,*
109 Fed, Ck, 108 (2010), *on reconsideration in part,* 97 Fed. Cl. 80 (2011)................... 12

*OTI Am., Inc. v. United States,*
68 Fed. Cl. 646 (2005) ............................................................................................. 7, 17

*Overstreet Elec. Co. v. United States,*
47 Fed. Cl. 728 (2000) .............................................................................................20-21

*PGBA, LLC v. United States,*
57 Fed. Cl. 655 (2003) ................................................................................................. 21

*Safeguard Base Operations, LLC v. United States,*
989 F.3d 1326 (Fed. Cir. 2021)...................................................................................... 12

*Serco, Inc. v. United States,*
81 Fed. Cl. 463 (2008) ................................................................................................. 21

*Sunshine Constr. & Eng'g, Inc. v. United States,*
64 Fed. Cl. 346 (2005) ................................................................................................. 12

*Tetra Tech, Inc. v. United States,*
137 Fed. Cl. 367 (2017) ................................................................................................. 7

*Veterans4You LLC v. United States,*
985 F.3d 850 (Fed. Cir. 2021)......................................................................................... 6

*Veterans Contracting Grp., Inc. v. United States,*
133 Fed. Cl. 613 (2017) ............................................................................................... 20

*W. Bay Builders, Inc. v. United States,*
85 Fed. Cl. 1 (2008) .................................................................................................... 13

*WaveLink, Inc. v. United States,*
154 fed. Cl. 245 (2021) .................................................................................................. 8

**GAO Protests:**

*RELI Grp., Inc.,*
B-412380, Jan. 28, 2016, 2016 CPD ¶ 51........................................................................ 13

**Statutes:**

5 U.S.C. § 706 ........................................................................................................6

28 U.S.C. § 1491 ................................................................................................... 6

Plaintiff AccelGov, LLC respectfully requests that the Court enter an injunction preventing the Defense Health Agency, Enterprise Medical Support, Contracting Division ("DHA"), from issuing an award or starting performance during the pendency of this protest, and shows as follows:

**Factual Allegations**

Solicitation No. 1779525 (the "Solicitation") is a competitive acquisition for small businesses under FAR Part 8.4, set-aside for small business concerns. DHA sought a contractor "to provide operations and sustainment Information Technology (IT) services." DHA intends to award one task order on a best value basis and said, "[p]erformance period [will] be a Base Year of 12 months, inclusive of Transition, with four (4) 12-month option years and an optional six-month extension.

### A. Evaluation Criteria

The Solicitation said DHA would make award using the following three factors, listed in the descending order of importance:

Factor 1 – Technical

Factor 2 – Staffing Plan

Factor 3 – Price

Each factor would receive an adjectival rating ranging from Unacceptable to Outstanding.

Factor 1 has two subfactors: Subfactor 1 (Approach) and Subfactor 2 (Scenarios). The Solicitation said the Approach Subfactor is more important than the Scenarios Subfactor. Each subfactor would receive an adjectival rating ranging from Unacceptable to Outstanding. In turn,

DHA would assign Factor 1 ratings "based on the accumulation of aspects assigned" for each subfactor, but the Solicitation cautioned that "[a] rating in any Subfactor does not guarantee a particular rating[.]"

For the Approach Subfactor, offerors had to provide their approach for meeting the PWS's requirements, and:

- "describe its understanding of the requirements, the current operational environment, and its high-level approach to providing the required services, which must include tiered support and ITIL 4 practices."

- "describe the characteristics, conditions, and/or variables it believes will have a direct and critical impact on the effectiveness, efficiency, and viability of the Offeror's approach."

- "describe its approach to risks and managing risks. The Offeror will identify any significant risks it sees for providing the services and propose mitigations."

- "describe the overall timeline of activities from the Award Date through Transition and the implementation of its approach, to include critical milestones related to Transition."

- "describe its approach to meeting the performance requirements and service levels in the PRS. The Offeror will also describe how it attends to the interdependencies with the CIO & PEO MS (J-6) and other service providers, including the EITSI and the DHAGSC."

- "describe its approach to implementing a unique Continual Improvement Practice (CIP) for DDSB requirements and its processes and practices around service improvement initiatives to ultimately migrate to one standard with the DHAGSC. This shall include any innovative techniques the Offeror intends to use as part of its approach."

The Solicitation said DHA would "assess how the Offeror's proposal demonstrated" the following:

- "A clear and effective approach for meeting the requirements, including a complete understanding of the requirements and the current operational environment, such that the Government has a high level of confidence in the Offeror's success."

- "An approach which considers Transition timelines and constraints in current operational environment, and that demonstrates effective management of risk such that the Government has a high level of confidence in the Offeror's implementation and success."

- "A flexible and robust approach that can adjust to changing Government priorities, as well as processes and practices around service improvement, interdependencies, and innovative initiatives and techniques such that the Government has a high level of confidence in the Offeror's success and long-term value as a contractor providing services to the DHA."

For the Scenarios Subfactor, offerors had to provide "an Oral Presentation" for these three different scenarios:

Scenario #1 – McAfee Policy Auditor Impact on Domain Controllers

Scenario #2 – Endpoint Management

Scenario #3 – ICAM & Cybersecurity Assurance

Although DHA allowed offerors to provide written submissions to support their presentations, DHA said it would not evaluate the written materials. The Solicitation provided a structured presentation schedule, which included a "Q&A Session." During the Q&A Session, the government could "engage in exchanges with Offerors[.]" DHA would evaluate offerors' presentations to see if they demonstrate:

- "A practice that provides timely and professional services such that the Government has a high level of confidence in the Offeror's successful delivery of the required services."

- "A practice that has repeatable processes and methodologies that emphasize consistent obtainment of the required quality levels, such

that the Government has a high level of confidence in the Offeror's success."

- "A practice that protects the DHA technical investment and innovates within the DDSB branch constraints, such that the Government has a high level of confidence in the Offeror's long-term value and success as a contractor."

For Factor 2, offerors had to "submit [their] approach and capability to successfully staff with qualified personnel in a timely manner[.]" There, DHA would assess the extent to which each offeror demonstrated its capability to successfully staff qualified personnel and its key personnels' qualifications, among other things.

DHA would evaluate price in Factor 3 for reasonableness, balance and completeness. The Solicitation said that prices "must be determined fair and reasonable to be eligible for award."

## B. Evaluation and AccelGov's Exclusion from the Competition

AccelGov submitted a timely proposal, with a price of ███████████. On May 29, the contracting officer informed AccelGov that DHA completed its evaluation and found that AccelGov ████████████████████████ The contracting officer also revealed that DHA gave AccelGov "a combined rating of ██████████ for Factor 1." This "combined rating" considered AccelGov's ████████ rating for the Approach Subfactor and ████████ rating for the Scenarios Subfactor.

For the Approach Subfactor, AccelGov received ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

[black redaction bars]

DHA found that AccelGov ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and gave it an ▮▮▮▮▮▮▮ rating for the Approach Subfactor.

For the Scenarios Subfactor, AccelGov received ▮▮▮▮▮ for Scenario #1 and this weakness for Scenario #2:



DHA found that AccelGov met the Solicitation's requirements for the Scenarios Subfactor and gave it an Acceptable rating. However, DHA noted that the "Approach Subfactor is more important than the Scenarios Subfactor," and rated AccelGov ▮▮▮▮▮▮▮ for Factor 1.

[black redaction bar]

DHA gave AccelGov ▮▮▮▮▮▮▮▮ for Factor 2, and assigned it a ▮▮▮ rating. The contracting officer did not provide any information about the price evaluation.

**Argument and Citation of Authorities**

A protester seeking a preliminary injunction must establish four different factors: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that the injunction serves the public interest. *NetStar-1 Gov't Consulting, Inc. v. United States*, 98 Fed. Cl. 729, 731 (2011). Further, "[n]o one factor is dispositive to the court's inquiry as the weakness of the showing regarding one factor may be overborne by the strength of the others." *Id.* (internal citations omitted). As demonstrated in the sections that follow, each factor militates in favor of entering an injunction during the pendency of this protest.

## I.     AccelGov is likely to succeed on the merits.

The Court of Federal Claims reviews agency procurement decisions under the standards set out in § 706 of the Administrative Procedure Act. 28 U.S.C. § 1491(b)(3). More particularly, it applies the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of 5 U.S.C. § 706(2)(A). *Veterans4You LLC v. United States*, 985 F.3d 850, 857 (Fed. Cir. 2021). "In order to satisfy this standard, the protestor must demonstrate: (1) that the procurement decision 'lacked a rational basis;' or (2) 'a clear and prejudicial violation of applicable statutes and regulations.'" *Id.* (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). AccelGov will show that DHA's Factor 1 evaluation was unreasonable.

**A.      DHA unreasonably evaluated AccelGov under the Approach Subfactor.**

There is no question DHA had to evaluate AccelGov's quote reasonably against the stated evaluation criteria.  *See, e.g.*, *Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 383 (2017) ("Generally speaking, an agency must evaluate an offeror's proposal based on the criteria set out in the solicitation."); *OTI Am., Inc. v. United States*, 68 Fed. Cl. 646, 655 (2005); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 652 (2003).  In doing so, DHA had to read AccelGov's proposal reasonably and give it a reasoned response.  *See 22nd Century Techs., Inc. v. United States*, 176 Fed. Cl. 389, 398 (2025).  The government acts unreasonably when it applies unstated evaluation criteria, or fails to read proposals reasonably.  *See Frawner Corp. v. United States*, 161 Fed. Cl. 420, 443 (2022); *OTI Am.*, 68 Fed. Cl. at 655; *22nd Century*, 176 Fed. Cl. at 398; *Barbaricum LLC v. United States*, 172 Fed. Cl. 186, 197 (2024).  That happened here when DHA unreasonably gave AccelGov ██████████ in the Approach Subfactor.

> **1.      DHA deviated from the Solicitation and ignored AccelGov's effective operational risk management approach to give AccelGov its ██ ██████**

DHA gave AccelGov a ███████ for its approach to managing risks.  DHA said AccelGov ████████████████████████████████████ because the proposal supposedly ██████████████████████████████████████████ ████████████████ DHA's rationale falls apart when looking at the Solicitation's instructions and AccelGov's proposal.

First, the Solicitation did not require offerors to address the ████████████████ ██████ The Solicitation directed offerors to "describe [their] approach to risks and managing risks."  In doing so, offerors had to "identify risks … for providing services and propose



mitigations."  Neither the Solicitation nor the PWS even uses the phrase ███████ ██████

AccelGov followed the Solicitation.  AccelGov ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████  There is no question that AccelGov followed the Solicitation's instructions.  Had DHA intended offerors to include ████████████████ in their risk management approach, the Solicitation should have made that clear.  *See Blue Tech Inc. v. United States*, 155 Fed. Cl. 229, 240 (2021).  DHA was "bound to follow the … terms as written, not how [it] wishes it had written them."  *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 274 (2021).  DHA's deviation from the Solicitation was unreasonable.

Even assuming DHA's reference to the ████████████████████ derives from the separate instruction to describe "its understanding" of the PWS requirements, AccelGov satisfied that requirement as well.  In the background section, the PWS says that the contractor will manage three RMF Authority-to-Operate systems: "Multi-Purpose Kiosk | Desktop As A Service (DHAMPK-DaaS); Medical 365 (MED365); and Medical Joint Active Directory (mJAD) IT Systems."  AccelGov's proposal included ████████████████████████ ██████████ that addressed "all non-task PWS requirements in accordance with the solicitation instructions."  (emphasis omitted).  For "General Requirements (PWS 1.0-2.0, 6.0)," AccelGov said it would ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ (emphasis omitted).  AccelGov also ████████████████ when discussing its approach and understanding of the requirements, as shown in the following examples:



AccelGov clearly addressed any requirement related to the MED365, mJAD, and DHAMPK-DaaS ATOs. The ███████████████████████████ was unreasonable.

DHA also faulted AccelGov for supposedly failing to include ███████████████ ███████ but that criticism does not align with AccelGov's proposal. In volume II, section 1.4, AccelGov proposed to ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ AccelGov explained that its

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████ Figure 1.4-1 shows AccelGov's full methodology:



The methodology includes █████████████████████████████

████████████████████████████ is, by definition, a preventative RMF process.

DHA's contrary finding was not based on a reasonable reading of AccelGov's proposal.

As a whole, DHA's concerns were inconsistent with the Solicitation and AccelGov's

proposal, so this ███████ was unreasonable.

**2. DHA's ██████████ unreasonably penalized AccelGov's timeline presentation format.**

The Approach Subfactor directed offerors to "describe the overall timeline of activities

from the Award Date through Transition and the implementation of its approach, to include

critical milestones related to Transition." AccelGov addressed the requirement ████████

████████████████████████████████████████████████



The figure includes the ████████████████████

Although DHA acknowledged that AccelGov provided a timeline, it gave AccelGov a

████████████ for ████████████████████████████████████████

████████████████████████████████████████ That ████████ faulted

AccelGov for providing a timeline depiction, instead of a narrative description. This finding was

unreasonable.

████████████████████████████████████████████████████

The Court of Federal Claims interprets solicitations applying the same interpretive principles applicable to contracts. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1344 (Fed. Cir. 2021). And, unless a special meaning is clear, the Court of Federal Claims gives terms their ordinary meaning. *See G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 401 (2022). In this case, the question is whether the term "describe" required offerors to provide a timeline in narrative form, rather than as a figure or illustration. "Describe" generally means "to represent or give an account of in words," or "to represent by a figure, model, or picture[.]" *See Describe*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/describe (last visited June 15, 2026). By its ordinary meaning, AccelGov "describe[d] the overall timeline" with its Figure 1.5-1. No narrative was required. Had DHA intended to require a narrative as the exclusive timeline format, it should have said so. *See Blue Tech Inc.*, 155 Fed. Cl. at 240 (noting that if the agency sought a specific response in proposals, "it could have crafted" the solicitation's language "more narrowly"). Unfortunately for DHA, that is not what the Solicitation said. DHA's interpretation departed from the term's ordinary meaning, and was therefore unreasonable. As such, this ▮▮▮▮ should not stand.

However, if DHA's interpretation was reasonable, then the Solicitation was susceptible of two or more reasonable readings, meaning it was ambiguous. *See, e.g.*, *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). There are two types of ambiguities: patent and latent. *See, e.g.*, *Sunshine Constr. & Eng'g, Inc. v. United States*, 64 Fed. Cl. 346, 358 (2005). A patent ambiguity "is one that is 'obvious, gross, glaring' or 'an obvious omission, inconsistency, or discrepancy in significance,' such that the error is readily apparent," while a latent ambiguity "is a 'hidden or concealed defect'" that may only become evident during evaluation. *Oenga v. United States*, 109 Fed. Cl. 108, 141 (2010), *on reconsideration in part,* 97

Fed. Cl. 80 (2011) (quoting *W. Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 15 (2008));

*RELI Grp., Inc.*, B-412380, Jan. 28, 2016, 2016 CPD ¶ 51, at *6.

Here, it was not apparent or obvious that DHA would require a narrative over any other

format describing the timeline. DHA's interpretation only came to light after AccelGov received

the notice from the contracting officer detailing this ███████ To the extent there was an

ambiguity here, it was latent. For that reason, the Court should require DHA to either evaluate

proposals in a manner consistent with AccelGov's reasonable interpretation, or amend the

Solicitation and allow the offerors with ████████ to resubmit proposals based on a common

understanding. *See 22nd Century Techs., Inc.*, 176 Fed. Cl. at 398 n.4; *FirstLine Transp. Sec.,*

*Inc. v. United States*, 100 Fed. Cl. 359, 403 (2011).

**3. DHA's ██████████ overlooks AccelGov's clear approach to meeting the PRS**

The Approach Subfactor also required offerors to describe their approach to meeting the

performance requirements and service levels in the PRS. For this requirement, each offeror had

to "describe how it attends to the interdependencies with the CIO & PEO MS (J-6) and other

service providers[.]"

AccelGov addressed this requirement in ████████████████. In the last

sentence dedicated to this issue, AccelGov proposed to ████████████

████████████████████████

████████████████████ DHA seized on this

██████████ ████████████████

████████████████████████████

███████████████████████████████████████████ But AccelGov's

proposal said more than DHA credited.

In addition to ██████████, AccelGov's ██████████ said:



AccelGov's discussion also incorporated ██████████ by reference. There, AccelGov

provided more information about its approach to meet the PRS. For example, AccelGov said

this about meeting the PRS's performance requirements in the PRS:



████████████████████████████████████████████████

AccelGov also discussed the PRS's service level requirements in ████████████. Specifically, AccelGov ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ AccelGov also explained that ██████████████████████████████████████████████████████████ ████████████████████████████████████ which is directly responsive to service level requirement 2.1.1.  Additionally, AccelGov said its █████████████ ████████████████████████ complying with service level requirement 2.6.1.

AccelGov clearly provided an approach to meeting the PRS.  DHA overlooked this discussion when it gave AccelGov the ████████████ which made the ██████ unreasonable. *See 22nd Century Techs., Inc.*, 176 Fed. Cl. at 397 (sustaining a protest where "[t]he [a]gency appears simply to have missed the relevant discussion").

**4.**     **AccelGov provided more than a ██████████████████ so the ██████ ██████████ is unreasonable, too.**

For the final Approach Subfactor requirement, offerors had to provide an "approach to implementing a unique Continual Improvement Practice (CIP)[.]"  DHA thought AccelGov ████████████████████████ approach, but AccelGov's proposal told a different story.

AccelGov provided its unique CIP approach, █████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Aside from the step-by-step

narrative explanation, AccelGov included this visual for its approach:



AccelGov also detailed how it would implement its approach:



AccelGov clearly provided more than a ████████████ approach. DHA's contrary

conclusion was unreasonable.

### 5. DHA's errors prejudiced AccelGov.

The Solicitation said DHA would assign an overall Factor 1 rating "based on the

accumulation of aspects assigned." Reasonably evaluated, AccelGov would have no weaknesses

under the most important Subfactor, leading to an ████████ rating. As evaluated, AccelGov

████████████████████████████████████████████████████

would also have an ████████ rating in the Scenarios Subfactor, with ████████████████ ████████ Had DHA reasonably evaluated AccelGov, it would at least be rated ████████ for Factor 1, ████ for Factor 2 and have a competitive price. AccelGov would have remained in the competition with a substantial chance of award.

**B.**      **DHA unreasonably evaluated AccelGov in the Scenarios Subfactor.**

As explained above, agencies must follow stated evaluation criteria and give proposals a reasonable reading. *See Frawner Corp.*, 161 Fed. Cl. at 443; *OTI Am.*, 68 Fed. Cl. at 655; 22*nd Century*, 176 Fed. Cl. at 398. For the Scenarios Subfactor, DHA gave AccelGov a ████████ for Scenario #2 – Endpoint Management. The ████████ was based, in part, on a supposed failure ████████████████████████████████████████ DHA's finding departed from the instructions and AccelGov's presentation.[1]

The instructions for each scenario included background information, an operational scenario and questions, among other things. DHA said this for Scenario #2's operational scenario:

> Throughout the transition to co-management and then to cloud, operational work continues as well. The team receives reports of entire sites unable to utilize MHS Genesis or VMware Horizon Client. Clinics reported .NET errors when they attempted to launch Citrix Workspace used when connecting to MHS Genesis.

Offerors also had to provide their approach related to the following five questions:

> **Issue Handing**: What solutions would you propose to ensure the transitions while minimizing site and user impact and maintaining security

---

[1] We recognize that offerors' written submissions were not evaluated for the Scenarios Subfactor. However, AccelGov's written materials reflect its presentation's contents.

████████████████████████████████████████████████

compliance?

**Root Cause Analysis**: What are the investigative steps for identifying the root cause of any issues encountered during the transition?

**Permanent Resolution**: What solutions would you propose to ensure the transition to Co-Management is successful while also minimizing user impact and maintaining security compliance?

**Incident Handling**: Using the example of the transition consequences, what immediate and long-term mitigations would you implement for other potential issues?

**Operational Stability**: Discuss your approach to investigating and resolving user issues, such as the .NET error, even while managing the transition of the environment to the cloud.

Scenario #2 did not mention "Zero Trust." In fact, the only reference to "Zero Trust" was in Scenario #3. Because Scenario #2 did not involve (or require discussion of) "Zero Trust," DHA could not reasonably downgrade AccelGov for failing to address it.

Also, contrary to the assigned ███████ AccelGov addressed the ██████████ ████████████ For example, AccelGov said,

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

To address these challenges, AccelGov proposed to conduct ████████████ ██████████████████████████████████

AccelGov explained that its ████████████████████ ██████████████████████████████████ ███████████ Moreover, AccelGov's ████████████████

██████████████████████████████████

█████████████████████████████████████████████████████

██████████ AccelGov's proposal clearly addressed the transition to a cloud-native environment. DHA's inconsistent finding was unreasonable.

Had DHA reasonably evaluated AccelGov, it would have identified no ██████████ under the Approach Subfactor, and ██████████ under the Scenarios Subfactor. At a minimum, the elimination of these errors would have left AccelGov with ██████████ and ██████████ ████████ for Factor 1. That warranted at least an ██████████ rating under the Solicitation's rating scheme. Combined with its ████ rating for Factor 2 and competitive price, AccelGov would have remained in the competition with a substantial chance of award.

A ████ rating for Factor 1 was equally attainable. The Solicitation provides that a Good rating was appropriate where strengths outweighed the weaknesses. In a reasonable evaluation, DHA could have concluded that the ██████████ outweighed the ██████████████████ ██████████ in Factor 1 to obtain a ████ rating. With ████ ratings for both non-price factors and a competitive price, AccelGov would have remained in the competition with a substantial chance of award.

For these reasons, AccelGov has a reasonable likelihood of success on the merits, which weighs in favor of granting a preliminary injunction.

## II. AccelGov will suffer irreparable harm without an injunction

An irreparable injury is one for which there is no adequate legal remedy. *Harmonia Holdings Grp., LLC v. United States*, 166 Fed. Cl. 727, 740 (2023); *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). "[W]here [the] plaintiff has no action against the United

███████████████████████████████████████████████████████

States for lost profits, the harm to plaintiff is irreparable[.]" *Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66, 78 (2007). In a bid protest, "the only other available relief—the potential for recovery of bid preparation costs—would not compensate [a protester] for the loss of valuable business on the [resulting] contract." *NetStar-1 Gov't Consulting, Inc.*, 101 Fed. Cl. at 520. This loss stems from a protester's failure to "have its proposal 'fairly and lawfully considered," which "constitutes irreparable injury.'" *Id.* (quoting *Great Lakes Dredge & Dock Co. v. United States,* 60 Fed. Cl. 350, 370 (2004)); *see also Linc Gov't Servs., LLC v. United States*, 108 Fed. Cl. 473, 511 (2012); *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000); *Veterans Contracting Grp., Inc. v. United States*, 133 Fed. Cl. 613, 623 (2017).

AccelGov will suffer irreparable harm absent preliminary relief. DHA excluded AccelGov's proposal from the competition, depriving it of a fair opportunity to compete and receive the award. Without the requested relief, DHA may proceed with contract award and begin performance before the protest is resolved. Once performance commences, the awardee will perform work and earn revenues that otherwise would have been available to AccelGov had it been properly considered for award. That lost business opportunity, competitive harm and lost profit cannot be fully remedied after the fact. As such, preliminary injunctive relief is necessary to preserve the status quo and ensure that meaningful relief remains available should the protest be sustained and award ultimately be made to AccelGov. This factor weighs in favor of injunctive relief.

## III. The balance of harms favors AccelGov

Under this factor, the Court considers whether the "balance of hardships leans in the plaintiff's favor . . . [while also] consider[ing] . . . the harm to the government." *Overstreet Elec.*

*Co.*, 47 Fed. Cl. at 744. The delay caused by immediately enjoining an award does not "alone warrant a denial of injunctive relief." *Id.* (noting that this is especially true where "the defendant's own failure" creates the basis for a potential injunction).

As stated above, the harm to AccelGov is the loss of an opportunity to fairly compete for an award it had a significant opportunity to receive. DHA's arbitrary, unlawful, and irrational actions deprived AccelGov of the opportunity to partake in fair and open competition. And as a result, DHA has divested AccelGov of any profits derived therefrom. DHA could have prevented any potential countervailing harm by reasonably evaluating AccelGov's proposal.

**IV.    An injunction serves the public interest in honest, open, and fair competition**

"Clearly, the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008) (quoting *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003)); *KWV, Inc. v. United States*, 108 Fed. Cl. 448, 458 (2013); *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 486 (2006). DHA acted unreasonably, as discussed above. An injunction pending resolution of this protest serves the public's interest in honest, open, and fair competition as well as its interest in obtaining the best value for its tax dollars.

## Conclusion

For the reasons stated above, the Court should enter a preliminary injunction enjoining DHA from making award or starting performance during the pendency of this protest.

Dated: June 15, 2026

Respectfully submitted,

/s/ W. Brad English

W. Brad English
Emily J. Chancey
Taylor R. Holt
Hunter M. Drake

*Attorneys for AccelGov, LLC*

**OF COUNSEL:**

MAYNARD NEXSEN PC
223 Washington Street NE, Suite 500
Huntsville, Alabama 35801
(256) 512-5705
benglish@maynardnexsen.com
echancey@maynardnexsen.com
taholt@maynardnexsen.com
hdrake@maynardnexsen.com

**Certificate of Service**

I hereby certify that on June 15, 2026, I caused copies of the foregoing to be served by

electronic mail upon the following:

U.S. Department of Justice
Commercial Litigation Branch
National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, D.C., 20044

/s/ W. Brad English

Of Counsel